Randy WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 1149–86, 288–88.

Court of Criminal Appeals of Texas, En Banc.

March 10, 1993.

Rehearing Denied April 14, 1993.

Clinard J. Hanby, Houston, for appellant.

Grant Jones, Dist. Atty., Leslie Poynter, Asst. Dist. Atty., Corpus Christi, Robert Huttash, State's Atty., Julie B. Pollock, Former Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S AND APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW

PER CURIAM.

Appellant was convicted in a consolidated trial of the offenses of aggravated kidnapping and aggravated sexual assault and received a life sentence for each offense. Appellant argued that the trial court fundamentally erred in charging the jury at the punishment stage that aggravated kidnapping was a first degree felony. The State and appellant also disputed whether this charge corrupted the jury's punishment consideration of aggravated sexual assault. The court of appeals agreed with the appellant's contention that the trial court's instruction amounted to fundamental error, and accordingly reversed and remanded appellant's conviction for aggravated kidnapping. *See Williams v. State*, 718 S.W.2d 772 (Tex.App.—Corpus Christi 1986). However, the court of appeals affirmed the conviction for aggravated sexual assault, concluding that appellant failed to demonstrate how the aggravated kidnapping charge influenced the jury's deliberation of punishment on the aggravated sexual assault. *Id.*, at 775. We granted petitions for discretionary review from both the State and appellant to consider whether the jury instruction that aggravated kidnapping is a first degree felony constituted fundamental error, and whether the aggravated kidnapping jury charge unfairly influenced the jury's assessment of punishment for aggravated sexual assault. Tex. R.App.Pro. 200(c)(2).

## I.

At about 4:20 p.m. on January 18, 1984, an assailant abducted the victim, a high school student, as she was preparing to leave a mall where she had been shopping. Forcing her into the passenger side of her car, the assailant drove her to a cemetery, compelled her to have sexual intercourse with him, then left her at the cemetery. After a few moments to recover, the victim walked to a nearby motel and called her parents. The police arrived by about five o'clock and questioned the victim. She was taken to the hospital about an hour later.

The critical dispute at trial was the identity of the assailant. Neither fingerprints nor hair samples taken from the car conclusively connected the appellant with the offenses. However, the victim identified the appellant as the assailant in a line-up conducted approximately fifteen months after the offense. The defense produced alibi witnesses and raised various questions about the reliability of the identification. The jury found appellant guilty of both aggravated kidnapping and aggravated sexual assault.

At the punishment phase the State introduced appellant's prior conviction for burglary with intent to commit rape, for which the appellant had been placed on eight years probation. The State also called three probation officers and two police officers, all of whom testified that the appellant's reputation in the community as a peaceable and law-abiding citizen was bad. Appellant called members of his family who maintained that he was innocent.

The trial court instructed the jury that by their guilty verdict, "you have found the [appellant] guilty of Aggravated Kidnapping, a felony of the first degree[,]" and that appellant could be punished "by confinement in the Texas Department of Corrections for life or for any term of not more than 99 years or less than 5 years." Appellant made no objection to this charge. The jury sentenced appellant to life for both aggravated kidnapping and aggravated sexual assault.

On appeal, appellant contended that the trial court erred in advising the jury that aggravated kidnapping was a felony of the first degree. The court of appeals reviewed V.T.C.A. Penal Code, § 20.04(b), which states:

"(b) An offense under this section is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place, in which event it is a felony of the second degree."

Relying upon *Wright v. State*, 571 S.W.2d 24 (Tex.Crim.App.1978), the court of appeals determined that the State bore the burden of proving beyond a reasonable doubt that the victim was not voluntarily released alive and in a safe place. Because the State failed to introduce any evidence that the cemetery was an unsafe place, the court of appeals concluded the instruction to the jury was erroneous. The court of appeals then applied *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985), to determine whether the error required reversal. Because the jury's punishment exceeded what a second degree felony authorizes, the court of appeals concluded that the harm was egregious, and reversed.

Appellant also sought reversal from the court of appeals for the aggravated sexual assault conviction on the grounds that the erroneous instruction on aggravated kidnapping deprived him of a fair assessment of punishment for aggravated sexual assault. However, appellant conceded that it is "impossible to determine what factors might have contributed to the severity of the [aggravated sexual assault] sentence." Because the harm contended was speculative, the court of appeals found that appellant did not meet his burden of demonstrating egregious harm required by *Almanza*, 686 S.W.2d 157, and affirmed appellant's aggravated sexual assault conviction.

We will address these issues *seriatim*.

## II.

In *Wright*, 571 S.W.2d 24, this Court approved a jury charge on aggravated kidnapping that informed the jury at the punishment phase that should the jury find that the victim was not voluntarily released alive and in a safe place, then the proper punishment range was between 5 and 99

years, or life. The approved charge also instructed the jury that, should it find that the victim was released alive and in a safe place, the proper punishment range was between 2 and 20 years. The *Wright* charge made it clear, as does the aggravated kidnapping statute itself, that the degree of punishment for aggravated kidnapping is contingent upon whether the actor released the victim alive and in a safe place.

The jury charge in the present case simply told the jury that aggravated kidnapping was a felony of the first degree and that the jury could assess a life sentence or any term of imprisonment between 5 and 99 years. The charge mentioned nothing about the requirement that the jury determine whether the victim was released alive and in a safe place. In effect, the trial court's instruction amounted to a judicial command to assess a punishment for a first degree felony. The court of appeals held that because the State failed to meet its burden to prove the place appellant released his victim was *unsafe*, the jury should instead have been instructed it could only assess punishment as a second degree felony. *Williams*, 718 S.W.2d at 774.

In its petition the State urges that, contrary to the holding of the court of appeals, it is appellant who bears the burden of producing evidence that the victim was released alive and in a safe place and requesting an instruction on the issue at the punishment stage. Because appellant failed to show that the cemetery was a safe place, and did not request a mitigation charge, the State maintains that the charge did not constitute fundamental error.[1]

Thus, the question is now squarely before us, *viz:* which party is assigned the burden of proof under § 20.04(b). Section 20.04(b) provides that conviction for aggravated kidnapping shall be punishable as a first degree felony "unless" the accused voluntarily released his victim alive and in a safe place. We have construed Rule 81(b)(2), Tex.R.App.Pro., which mandates appellate reversal for trial error "unless" harmless, to place a burden upon the beneficiary of the error, which in that context is the State. *Arnold v. State*, 786 S.W.2d 295, 298 (Tex.Crim.App.1990). Thus, the State must convince an appellate court "beyond a reasonable doubt" that trial error was harmless.

In context of Penal Code § 20.04, however, it is the accused who benefits from a finding that his victim was released alive and in a safe place. The accused will be punished as a first degree felon "unless" such a finding is made; any doubt on the question would presumably be resolved against him. It would appear, then, consistent with *Arnold*, that the burden of proof should be assigned to the accused. But § 20.04 is different than Rule 81(b)(2) in two important respects. First, unlike harmfulness of trial error, which is a question for the appellate court in the first instance, the question whether an accused has released his victim alive and in a safe place is for the factfinder at trial. Burden of proof is broken down into two components at trial: burden of production, or going forward; and burden of persuasion. We must decide whether an accused shoulders both burdens under § 20.04. Second, unlike Rule 81(b)(2), § 20.04(b) does not prescribe a particular level of confidence. An appellate court must find trial error harmless "beyond a reasonable doubt" under Rule 81(b)(2). But in § 20.04(b), the Legislature did not say how persuasive the

---

1. The State relies upon two cases for support of its proposition, *Smith v. State*, 541 S.W.2d 831 (Tex.Crim.App.1976), *cert. denied*, 430 U.S. 937, 97 S.Ct. 1565, 51 L.Ed.2d 783 (1977), and *Butler v. State*, 645 S.W.2d 820 (Tex.Crim.App.1983). *Smith* held that an indictment for aggravated kidnapping is not fundamentally defective because it fails to allege that the victim was not released in a safe place. *Smith*, 541 S.W.2d at 838. This court also noted in *Smith* that the issue of re-lease in a safe place is relevant at the punishment stage of an aggravated kidnapping

prosecution. *Id.* In *Butler*, we simply applied *Smith's* holding to a motion to quash an indictment and concluded that "[p]leading failure to voluntarily release in a safe place has no bearing on notice at the guilt-innocence stage of the trial." *Butler*, 645 S.W.2d at 823. See also Reamey, Criminal Offenses and Defenses in Texas, p. 244. Thus, neither case deals directly with the question of how the burden of proof that a victim was "released in a safe place" should be allocated at the punishment phase of trial.

factfinder must find the party with the ultimate burden to be.

This Court has said that § 20.04(b) does not constitute an exception to the offense, under V.T.C.A. Penal Code, § 2.02. *Smith v. State*, 541 S.W.2d 831 (Tex.Crim.App. 1976). By statute, the State carries both the burden of production and of persuasion to negate an exception. *See* § 2.02(b). Having said that the issue of release of the victim alive and in a safe place is *not* an exception, we cannot consistently place both the burden of production and the burden of persuasion on the State. The State argues that we should instead construe § 20.04(b) to operate like a legal defense, with the initial burden of production on the accused, but the ultimate burden of persuasion on the State. We agree.

We take guidance from V.T.C.A. Penal Code § 2.03(e). That provision reads:

"A ground of defense in a penal law that is not plainly labeled in accordance with this chapter has the procedural and evidentiary consequences of a defense."

Strictly speaking, that an accused may have released his victim alive and in a safe place is not "a ground of defense" in the sense that it excuses or justifies commission of the offense. Because it "only mitigates punishment[,]" we have said the issue of safe release is properly litigated at the punishment phase of trial. *Robinson v. State*, 739 S.W.2d 795, 797 (Tex.Crim. App.1987). Nevertheless, we find § 2.03(e) instructive in deciding how that issue should be litigated at the punishment phase.

■■■■ We hold that the issue of whether an accused voluntarily released his victim

alive and in a safe place "is not submitted to the jury unless evidence is admitted supporting" a finding that he did. V.T.C.A. Penal Code § 2.03(c). In other words, the accused has the threshold burden of production; if no evidence from either party could support that finding, the accused is not entitled to an instruction, and he will be punished as a first degree felon. If evidence from any source does raise the issue, however, then "the court shall charge that a reasonable doubt on the issue requires" the jury to find the accused did in fact release his victim in a safe place. *See* § 2.03(d). Once the issue is raised, the burden of production is met.[2] As is the case with a defense issue, the burden of persuasion then shifts to the State; it must convince the factfinder that the place where the accused left his victim was *not* safe. The factfinder must find the place unsafe to a level of confidence "beyond a reasonable doubt." If so, the accused has committed a first degree felony; otherwise he will be punished as a second degree felon.[3]

This holding is consistent with our opinion in *Wright*, 571 S.W.2d 24. In *Wright*, we approved a jury charge that placed the ultimate burden upon the State to show that the victim was not released in a safe place. We suggested that the *Wright* charge could be improved by instructing the jury that if it finds "from the evidence beyond a reasonable doubt that the victim was not voluntarily released alive and in a safe place," then it should assess a first degree punishment. The purpose of the suggestion was to clarify what was implicit in our analysis, i.e., that the State bears the

---

**2.** The burden of production is no more than a rule of default, prescribing which party loses if there is a total failure of proof. Though the burden of production is on the accused, evidence raising the issue, and thus meeting that burden, may come from either party. In the present context it is likely that evidence raising the issue whether the place of a victim's release was safe will often come out in the course of the State's own evidence of the circumstances of the offense itself, at the guilt phase of trial. If no evidence whatever is adduced by either party showing the nature of the place of release, however, the accused, having failed in his burden of

production, will be punished as a first degree felon.

**3.** This allocation of the burden of proof is entirely consistent with federal due process. *See Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Indeed, even the dissenters in *Patterson* would apparently find our allocation of the burden here constitutionally acceptable. *See* 432 U.S. at 229–30 & n. 14, 97 S.Ct. at 2337 & n. 14, 53 L.Ed.2d at 304. *See also McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).

ultimate burden on the issue of whether the victim was released alive and in a safe place.

■ The court of appeals held the trial court should have instructed the jury it could only convict appellant as a second degree felon because the State produced no evidence to show the cemetery where he released his victim was *not* safe. *Williams*, 718 S.W.2d at 774. Such a holding improperly places the initial burden of production upon the State. In our view, the evidence presented in this cause was sufficient to justify an inference that the cemetery was a safe enough place. Thus, the issue was raised, and appellant's burden of production was met. It then became a matter for the factfinder to determine whether the cemetery was in fact unsafe. The burden of persuasion being upon the State, any reasonable doubt on that issue would be resolved in appellant's favor. The court of appeals recognized that the issue of "safeness" is one of fact to be resolved by the trier of fact. *Id.* at 775. The court of appeals correctly held the trial court erred in instructing the jury at punishment that aggravated kidnapping is a felony of the first degree and in directing them to assess punishment according to the applicable range. The appellate court went too far, however, in concluding that the trial court should have instructed the jury that appellant was guilty of a second degree felony. *Id.* at 774. Instead, the issue of safe release should have been submitted to the jury, with instructions that it assess punishment in accordance with its resolution of that issue. We conclude the trial court's failure to so instruct the jury was error.

■ Finding error in the court's charge, we must now determine whether that error is reversible. *Almanza*, 686 S.W.2d 157.

We apply the *Almanza* "egregious harm" test because appellant failed to object to the jury charge at punishment. *Id.* at 171. Utilizing this same test, the court of appeals concluded the trial court's error was fundamental "[s]ince the jury assessed a punishment beyond that which the evidence legally authorized[.]" *Williams*, 718 S.W.2d at 775. The court of appeals reasoned that the State failed to introduce evidence to support a finding of "unsafeness," and therefore a rational trier of fact could not have found beyond a reasonable doubt that the victim was not released alive and in a safe place. *Id.* In other words, in the court of appeals' opinion, the evidence only supported a conviction on the second degree felony of aggravated kidnapping, yet the jury assessed punishment as if the offense were a first degree felony; thus, the error was egregious.

We do not agree with the court of appeals' analysis of the harm issue. First, we refuse to create a per se rule that a defendant suffers egregious harm when the trial judge fails to instruct the jury on a "lesser included offense" [4] and the jury assesses a sentence and/or fine beyond the punishment range for the lesser included offense, but within the applicable range for the greater offense. Rather, this Court determines whether an error egregiously harmed a defendant on the basis of the facts of the case as they are preserved in the record. *Almanza* dictates that "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." 686 S.W.2d at 171. We search for actual, not just theoretical, harm to the accused.

4. We use the term "lesser included offense" liberally in this regard. In this cause, we are of course dealing with only one offense, aggravated kidnapping, but with two possible punishment ranges depending on resolution of the fact issue on "safeness." Failure to instruct the jury on this fact issue (when raised by the evidence as in this case) precludes the jury's consideration of whether the defendant committed *second degree felony* aggravated kidnapping because the victim was released alive and in a safe place or *first degree felony* aggravated kidnapping where the victim was not. It is in this sense only that we consider one offense as a "lesser included offense" of the other. *Cf. Mitchell v. State*, 807 S.W.2d 740, 742 (Tex.Crim. App.1991).

Secondly, we do not agree with the court of appeals that appellant has suffered egregious harm by the trial court's error in the charge. In reaching this conclusion, we researched cases, which admittedly are not directly on point, but which are instructive on the methodology of the harm analysis to be performed.[5] The cases concern unpreserved *"Cobarrubio* error" where the jury is permitted to convict a defendant of murder without finding that the State disproved the existence of sudden passion (raising the issue of voluntary manslaughter), thus diminishing the State's burden of proof.[6]

In *Castillo–Fuentes v. State,* 707 S.W.2d 559 (Tex.Crim.App.1986), the defendant was convicted of the murder of his common-law wife. The offense grew out of an argument about the last name of the couple's child and the deceased's jealousy of another woman. The deceased threatened to kill the defendant and attempted to reach for a rifle which the defendant grabbed first. In a fit of anger, the defendant shot the deceased three times. The trial court found voluntary manslaughter was raised by the evidence and charged the jury accordingly, to which the defendant did not object. On appeal, this Court found the trial judge erred in failing to place the State's burden of proving lack of sudden passion in the paragraph of the charge applying the law of murder to the facts of the case. Undertaking a thorough evidentiary review in the case, and comparing the case to a recently decided case [7] presenting unpreserved *Cobarrubio* error, the Court held the defendant suffered egregious harm from this error. The record revealed that voluntary manslaughter was the "primary, indeed the only theory proffered by the defense[,]" and that the bulk of defense counsel's evidence and closing argument addressed the issue of sudden passion. *Castillo–Fuentes,* 707 S.W.2d at 562.

Utilizing this same harm analysis, this Court reached the same result in *Ruiz v. State,* 753 S.W.2d 681 (Tex.Crim.App.1988). Here, the defendant was convicted of the murder of a bar's "bouncer" whom he shot and killed after being forcibly removed from the establishment. The trial judge instructed the jury on the offenses of voluntary manslaughter and murder but committed *Cobarrubio* error in the process, to which the defendant failed to object. This Court determined that the error egregiously harmed the defendant. A review of the record revealed that the evidence of "sudden passion" was substantial, that the defendant interposed no other defense or affirmative defense, that defense counsel did not dispute the State's version of the facts but argued the State failed to prove murder beyond a reasonable doubt, and that the jury was confused by the instructions on murder and voluntary manslaughter.

In determining the defendants in *Castillo–Fuentes* and *Ruiz* had suffered egregious harm, the Court distinguished *Lawrence v. State,* 700 S.W.2d 208 (Tex.Crim.App.1985), where no egregious harm resulted from this type error. The defendant and the deceased in *Lawrence* were live-in lovers who, after drinking for several hours, began fighting when the deceased danced with another woman. Their quarrel continued to their home where the two allegedly struggled and the defendant shot and killed the deceased. The trial judge instructed the jury on the offenses of murder and voluntary manslaughter but committed *Cobarrubio* error in the charge to which there was no objection. The defendant was convicted of murder, yet this Court found no egregious harm resulting from the erroneous charge where "there was more than sufficient evidence to convict [the defendant] of murder." *Lawrence,* 700 S.W.2d at 211. Further review of the record revealed the defendant's testimony refuted any claim of voluntary manslaughter, and in fact, defense counsel ar-

---

5. *Cf. Sattiewhite v. State,* 786 S.W.2d 271, 287 (Tex.Crim.App.1989), where this Court states in dictum that even if evidence supports a charge on voluntary manslaughter, if unobjected to, an appellant must show egregious harm.

6. *See Cobarrubio v. State,* 675 S.W.2d 749 (Tex. Crim.App.1983).

7. *Lawrence v. State,* 700 S.W.2d 208 (Tex.Crim. App.1985).

gued "this is a classic case of self-defense." *Id.*, n. 4. The Court therefore concluded that since voluntary manslaughter was an incidental theory of the defense, "the subtle deletion of the State's burden of proof on the absence of sudden passion in the murder application paragraph cannot realistically be construed to inure to the defendant's egregious harm." *Id.* at 213. *See also Goff v. State*, 720 S.W.2d 94 (Tex. Crim.App.1986) (no egregious harm where voluntary manslaughter no more than incidental theory in case where evidence and argument emphasized justification of defendant's conduct under law of self-defense); and *Moore v. State*, 694 S.W.2d 528 (Tex.Crim.App.1985) (no egregious harm from trial court's failure to charge on negation of sudden passion in charge on murder where defensive theories were self-defense and defense of property, and voluntary manslaughter not argued to jury).

The harm, if any, resulting from the error in this case is even less than that in *Lawrence* and *Goff*, and more akin to that in *Moore*. The primary defenses offered by appellant during his trial were misidentification and alibi, as he concedes in his brief. While we have concluded the evidence supported an inference that the cemetery was a safe enough place, this issue of safeness was not a hotly-contested issue at trial, and neither party claims it as such. Indeed, defense counsel's jury argument [8] at punishment indicates it was not an issue at all. Defense counsel maintained appellant's innocence of these offenses, but since the jury had rendered a guilty verdict, counsel asked for leniency in punishment. The issue of "safeness" was never argued by counsel and, consequently, it was not even an *incidental* theory of the defense. The error, therefore, in not submitting the fact issue of safeness to the jury had minimal impact on appellant's trial. On the basis of the record before us, we hold appellant was not egregiously harmed by the trial court's failure to submit the issue of "safeness" to the jury in its charge on punishment. The State's ground for review is sustained.

## III.

In his petition, in his first ground for review, appellant complains that the erroneous charge on aggravated kidnapping also deprived him of a fair and impartial consideration of punishment for aggravated sexual assault. Because we hold no egregious harm resulted from the trial court's error, we find our decision to grant review on this issue was improvident. Tex. R.App.Proc. 202(k). Appellant's petition is therefore dismissed.

## IV.

Accordingly, the judgment of the court of appeals is affirmed in part and reversed in part. The judgment of the trial court is affirmed.

CLINTON, Judge, dissenting.

I agree with the majority's assignments of burden in the punishment issue of release of a kidnapping victim alive and in a safe place. I agree, as well, that the court of appeals erred to hold unqualifiedly that appellant should have been punished as a second degree felon in this cause. I part ways with the majority here in its conclusion that failure to submit the issue of safe release to the jury, with instructions that it assess punishment in accordance with its resolution of that question, did not constitute fundamental error under *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985). Moreover, because I disagree this error was harmless, I do not regard appellant's petition for discretionary review to have been improvidently granted. I do believe, however, that his contention is ultimately without merit.

## I.

The court of appeals found error in charging the jury that appellant should be punished as a first degree felon to be egregious, and hence fundamental under *Al-*

---

8. Counsel's jury argument during the guilt/innocence phase concentrated on misidentification of the perpetrator, suggestive line-up procedures, and alibi, which issue was included in the court's charge to the jury.

*manza.* While I disagree that a properly charged jury could not rationally have found that the cemetery was *not* a safe place, I nevertheless conclude that failure to submit the issue to the jury was egregious error.* The court of appeals assigned the entire burden of proof to show the place of release was safe to the State, and held that it wholly failed to meet that burden. Though now we hold that the State assumes only the ultimate burden of persuasion, it seems likely to me that a jury would ultimately find the State fell short of meeting even that partial burden. On the record in this cause a properly instructed jury would likely have found as a matter of fact that appellant did release his victim in a safe place—or at least have harbored a reasonable doubt that he did *not.* The issue was not simply *raised* here. It likely would have been resolved in appellant's favor! Thus, the harm here is "not just theoretical." *Almanza v. State,* supra at 174. That counsel for appellant did not argue for a finding of safe release is not surprising, much less persuasive in the egregious harm analysis. For without a fact issue submitted in the punishment charge, there was nothing for him to argue.

The likely finding that the complainant was released alive and in a safe place would have mandated punishment within a range of "not more than 20 years or less than two years." V.T.C.A. Penal Code, § 12.33. Instead, appellant was assessed a life sentence. That hardly sounds like a "minimal impact" to me. Op. at 289. Under the circumstances I cannot conclude he was afforded a fair and impartial punishment proceeding on his aggravated kidnapping conviction.

## II.

I do not agree appellant did not suffer egregious harm in the failure to submit the issue of safe release in relationship to his punishment for aggravated kidnapping. Therefore I cannot agree that our decision to grant his petition for discretionary review was improvident. Ultimately, however, I believe his contention fails.

Appellant complains that the erroneous charge on aggravated kidnapping also deprived him of a fair and impartial consideration of punishment for aggravated sexual assault. He asserts that the wrong penalty range in the aggravated kidnapping charge which misguided the jury's deliberation on that offense also misguided the jury's deliberation on the aggravated sexual assault conviction. Emphasizing that the same jury assessed punishment in both prosecutions and heard the same evidence, the appellant contends that it is unreasonable to suppose that the error infected only one of the two prosecutions.

Appellant relies primarily upon *Uribe v. State,* 688 S.W.2d 534 (Tex.Cr.App.1985) in which the trial court submitted a penalty range which exceeded that authorized by law. Although the jury in *Uribe* assessed punishment within the lawful range, a unanimous Court reasoned that "[t]he court's misdirection thus harms the defendant because the jury is instructed to consider his offense as more serious than the law grades it. Although the jury assessed punishment within the lawful range, an appellate court will not presume that the jury would have assessed the same punishment if the jury had been correctly instructed that the law holds the offense to deserve a lesser maximum punishment." *Uribe,* supra at 538. This Court noted that the "range of punishment is society's statement of the seriousness of the crime and necessarily influences the jury in its punishment decision." *Uribe,* supra at 536, quoting *Gonzales v. State,* 672 S.W.2d 618 (Tex.App.—Amarillo 1984, no pet.).

Although *Uribe* is instructive, it is distinguishable from the present case. *Uribe* involved conviction for only one offense, for which the jury was instructed on an improperly high punishment range. In the present case, the instruction authorizing

---

* Obviously I would reject the court of appeals' dictum that "[i]f the evidence had been sufficient to create a fact issue on 'safeness,' the trial court's instruction may not have risen to the level of egregious harm." *Williams v. State,* supra, at 775.

punishment for the aggravated sexual assault conviction was correct.

Appellant essentially argues that the error committed in the instruction authorizing punishment for aggravated kidnapping as a first degree felony somehow spilled over to vitiate assessment of punishment for aggravated sexual assault as well. The court of appeals held that such harm was too "speculative," and at any rate not sufficiently egregious to justify reversal of the aggravated sexual assault conviction, *sans* objection. Albeit before *Almanza* was decided, this Court has held similarly on a similar set of facts. *Blott v. State*, 588 S.W.2d 588, at 590 (Tex.Cr.App.1979).

In *Blott* the defendant was convicted in a single proceeding of three instances of injury to a child and one instance of aggravated assault. The jury charge at the conclusion of the guilt phase of trial authorized conviction should the jury find the defendant acted, *inter alia*, "with criminal negligence." Because the indictment did not allege that particular *mens rea*, the Court recognized that the instructions on injury to a child reduced the State's burden of proof and thus were fundamentally defective under *Cumbie v. State*, 578 S.W.2d 732 (Tex.Cr.App.1979). The defendant argued that the fundamental error adhering in the instructions on injury to a child also "tainted" the charge authorizing conviction for aggravated assault. This is particularly true, he asserted, in view of an apparent prosecutorial invitation to the jury to convict defendant of that offense as well upon a finding of no more than criminal negligence. Noting that the defendant had failed to object to the prosecutor's argument, and that the instruction on aggravated assault properly required a finding that the defendant acted at least "recklessly," as the indictment had alleged, we rejected Blott's "taint" analysis.

Absent an objection to the aggravated kidnapping instruction, and in view of the fact that the instruction on aggravated sexual assault correctly identified the punishment range for that offense, we should likewise reject appellant's contention in the instant cause. It was within the jury's authority to assess a life sentence for the aggravated sexual assault offense. There is no indication in the record that the jury was invited to assess *additional* punishment for the aggravated sexual assault offense on the basis that he contemporaneously committed the offense of aggravated kidnapping. Cf. *Lomas v. State*, 707 S.W.2d 566 (Tex.Cr.App.1986). That the jury may have felt a pressure to assess a higher penalty for the aggravated sexual assault because it was erroneously informed it must consider as much as a life sentence for the aggravated kidnapping is a possibility too remote to justify the conclusion, as in *Uribe*, that appellant was deprived of fair and impartial assessment of punishment for the aggravated sexual assault.

### III.

Insofar as it affirmed appellant's conviction for the offense of aggravated sexual assault, the judgment of the court of appeals should be affirmed. We should also affirm the court of appeals' ultimate disposition of appellant's conviction for aggravated kidnapping; that cause should be remanded to the trial court for further proceedings not inconsistent with this opinion. Because the majority does not, I respectfully dissent.

MALONEY, J., joins.