NO. 07-01-0154-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 11, 2002

_____


MICHAEL ALONDUS BALQUE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 183RD DISTRICT COURT OF HARRIS COUNTY;

NO. 860013; HONORABLE JOAN HUFFMAN, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Following his plea of not guilty, appellant Michael Alondus Balque was convicted by a jury of aggravated kidnapping, enhanced, and punishment was assessed at 31 years confinement and a $10,000 fine. Presenting six points of error, appellant contends (1) the evidence was factually insufficient to support his conviction where the jury's conclusion was clearly wrong and blatantly contrary to the record evidence on the element of

"abduction" and restraint of the complainant by secreting or holding her in a place where she was not likely to be found; (2) the trial court abused its discretion in denying his motion and request for an evidentiary hearing with live witness testimony instead of a "paper hearing by affidavit" regarding his motion for new trial raising grounds of ineffective assistance of his trial counsel; (3) the trial court committed fundamental error during the punishment phase by failing to charge the jury on the issue of whether the complainant was voluntarily released alive and in a safe place; (4) the trial court erred in overruling his objection to the prosecutor's argument urging the jury to return a guilty verdict outside the evidence based on the demands and expectations of the community; (5) the trial court erred in overruling his motion for mistrial when the prosecutor argued in a manner contrary to the law contained in the charge during the guilt/innocence phase; and (6) the trial court erred in overruling his objection to the prosecutor's argument during guilt/innocence urging a conviction outside the record based on "[e]verything that happens these days with domestic violence, that happens on the radio and the TV--." Based upon the rationale expressed herein, we reform and affirm in part, and reverse and remand in part.

On July 6, 2000, complainant and her 12-year old son were living with appellant in his apartment. After an argument, complainant and her son left to stay with a friend. On July 9, 2000, just shortly before 9:00 a.m., complainant's estranged husband, Robert Garcia, gave complainant a ride to work at Sonic Drive-In. Garcia pulled into a parking slot and as complainant exited the truck, appellant pulled into a nearby parking slot and asked

2

to speak with her. After reassuring Garcia that she would be fine, he drove away. According to complainant, appellant wanted her to go with him to gather her personal belongings from his apartment. She agreed, and while at his apartment, telephoned the assistant manager at Sonic to notify her she would be late for work.

Complainant was scheduled to work until 4:00 p.m. When she failed to pick her son up at the babysitter's, complainant's son called Sonic to find out why she had not done so. He was told that complainant had not reported to work that day. Garcia assumed complainant was gathering her things and moving out of appellant's apartment, so he and his son watched television until 10:00 p.m. Thereafter, Garcia became concerned and decided to drive by appellant's apartment. As he approached the apartment, he noticed a light go on and off and knocked on the door and the back window several times. No one answered, and after Garcia spoke with a neighbor, he called 911. When police officers arrived, Garcia expressed his concern about complainant's welfare. The officers knocked loudly on the door and windows and also called out for approximately 30 minutes. After obtaining a pass key from the apartment manager, one of the officers attempted to open the door but discovered it was bolted from inside. Immediately after the officers used the pass key appellant opened the door and claimed he had been asleep and had not heard them knocking. According to testimony from one of the officers, complainant came to the door with her face red, eyes swollen shut, and other physical trauma to her face that looked like she had been beaten. In appellant's presence, complainant told the officers

3

she had been in an automobile accident. The officers separated complainant from appellant and questioned them separately. At that time, complainant told one of the officers that appellant had beaten and kicked her for a better part of the day.

According to complainant's testimony, after she went to appellant's apartment they argued about money. He was angry and demanded that she remove her clothes. When she refused, he disrobed her and placed her in the bedroom. She testified that appellant threatened to kill her and after beating and kicking her for many hours, he directed her to take a bath. After freshening up, she dressed in a T-shirt and shorts and found appellant crying and remorseful, but claimed appellant still blamed her for the beating. Complainant decided to pacify appellant and try to leave the next morning. They laid on the bed and watched television until the officers knocked on the door. After complainant revealed the events that transpired that day, appellant was arrested.

Complainant, Garcia, and their son drove to complainant's friend's home and an ambulance was called to take complainant to the hospital for an examination. Tests revealed she suffered from a slight concussion, swollen brain, bruises on both arms and chest, and injuries to her face and eyes.

By his first point of error, appellant asserts the evidence was factually insufficient to support his conviction where the jury's conclusion was clearly wrong and blatantly contrary to the record evidence on the element of "abduction" and restraint of the

4

complainant by secreting or holding her in a place where she was not likely to be found. We agree. In conducting a factual sufficiency review, the Court of Criminal Appeals has directed us to ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000) (adopting complete civil factual sufficiency formulation); *see also* King v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). Accordingly, we will reverse the fact finder's determination only if a manifest injustice has occurred. *Johnson*, 23 S.W.3d at 12. In conducting this analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but must avoid substituting our judgment for that of the fact finder. *See* Santellan v. State, 939 S.W.2d 155, 164 (Tex.Cr.App. 1997). It is the exclusive province of the fact finder to determine the credibility of the witnesses and the weight to be given their testimony. Johnson v. State, 571 S.W.2d 170, 173 (Tex.Cr.App. 1978); Armstrong v. State, 958 S.W.2d 278, 284 (Tex.App.--Amarillo 1997, pet. ref'd).

Appellant was indicted for aggravated kidnapping.[1] Tex. Pen. Code Ann. § 20.04(a) (Vernon Supp. 2002). A person commits such an offense if he intentionally or knowingly abducts another person with the intent to inflict bodily injury. § 20.04(a)(4). Abduct means to restrain a person with intent to prevent her liberation by: (A) secreting or holding that person in a place where she is not likely to be found; or (B) using or threatening to use deadly force. § 20.01(2). By its charge, the trial court asked the jury to find appellant guilty of aggravated kidnapping if the evidence showed beyond a reasonable doubt that he:

> intentionally or knowingly abducted complainant, without her consent, with intent to prevent her liberation by secreting or holding [complainant] in a place where [complainant] was not likely to be found and with intent to inflict bodily injury . . . .

The charge also contained the lesser included offense of assault if the jury found that appellant unlawfully, intentionally, knowingly, or recklessly caused bodily injury to complainant by striking her with his hand or by kicking her with his feet. However, the charge did not instruct the jury that the abduction element of aggravated kidnapping could

---

[1] Appellant was originally indicted on July 10, 2000, as follows:

[appellant] did then and there unlawfully intentionally and knowingly abduct [victim], hereafter styled the Complainant without his [sic] consent, with intent to prevent his [sic] liberation by USING AND THREATENING TO USE DEADLY FORCE NAMELY, ASSAULT, ON THE COMPLAINANT, and with intent to INFLICT BODILY INJURY ON THE COMPLAINANT AND OR TERRORIZE THE COMPLAINANT.

Later, on November 1, 2000, appellant was re-indicted as follows:

> [appellant] did then and there unlawfully, intentionally and knowingly abduct [victim], hereafter styled the Complainant, without her consent, with intent to prevent her liberation by secreting and holding the Complainant in a place where the Complaint was not likely to be found and with intent to inflict bodily injury on the Complainant.

As demonstrated by the second indictment, appellant was not charged with nor tried for aggravated kidnapping by use or threat of deadly force. Thus, a hypothetically correct jury charge as permitted under *Malik* was not authorized by the second indictment. Malik v. State, 953 S.W.2d 234 (Tex.Cr.App. 1997). Accordingly, *Malik* does not apply.

6

also be established by evidence showing restraint by using or threatening to use deadly force. *See* Tex. Pen. Code Ann. § 20.01(2)(B).

The evidence established that complainant had been living with appellant in his apartment just a few days prior to July 9, 2000. Complainant's belongings were still at appellant's apartment and she was in the process of making arrangements to move out. Garcia testified that when he and his son did not hear from complainant all day, he decided to go to appellant's apartment

> because I couldn't figure out anyplace else that she would be. So, we just figured that she had to pick stuff up from there anyway and maybe she was there picking her stuff up because she [sic] going to be moving it out.

Complainant testified that appellant's caller identification indicated that a friend of hers had telephoned appellant's number late that afternoon probably because she had not picked up her son. According to complainant, appellant did not allow her to answer the call. The assistant manager from Sonic testified that appellant had called early on July 9, 2000, to notify her she would be late because she was moving her things out of appellant's apartment. From the foregoing evidence, the jury could have believed that complainant was restrained at appellant's apartment, but that his apartment was not a place where the complainant was not likely to be found. Schweinle v. State, 915 S.W.2d 17, 19-20 (Tex.Cr.App. 1996). We hold that the manner in which the jury was instructed on the element of abduction is not supported by the evidence. Thus, the evidence is factually

insufficient to support a conviction for aggravated kidnapping. Point of error one is sustained.

We must now determine whether the evidence is sufficient to support a conviction for the lesser included offense of assault. *See* Collier v. State, 999 S.W.2d 779, 782 (Tex.Cr.App. 1999) (holding that a court of appeals may reform a judgment of conviction to reflect conviction of a lesser included offense only if (1) the court finds that the evidence is insufficient to support conviction of the charged offense but sufficient to support conviction of the lesser included offense, and (2) the jury was instructed on the lesser included offense). A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Pen. Code Ann. § 22.01. Complainant testified that appellant struck her with his fist, open hand, and also kicked her. Appellant testified and admitted during direct and cross-examination that he was responsible for injuries to complainant's face. He testified that he pushed and slapped her several times out of anger. Although he denied causing bruises to her arms and chest, and thought they were caused by complainant wrestling with her son, it was the exclusive province of the jury to determine the credibility of the witnesses and the weight to be given their testimony. We conclude the evidence is sufficient to support a conviction for assault.

By his second point of error, appellant contends the trial court abused its discretion in denying his motion and request for an evidentiary hearing with live witness testimony instead of a "paper hearing by affidavit" regarding his motion for new trial raising grounds

of ineffective assistance of his trial counsel. We disagree. Rule 21.7 of the Texas Rules of Appellate Procedure authorizes a trial court to receive evidence at a hearing on a motion for new trial by affidavit or otherwise. Further, to warrant a hearing on a motion for new trial, the supporting affidavit "must reflect that reasonable grounds exist for holding that such relief could be granted." Jordan v. State, 883 S.W.2d 664, 665 (Tex.Cr.App. 1994). Appellant's sentence was imposed on February 15, 2001, and on February 20, he filed a *pro se* motion for new trial unsupported by affidavit. Appointed counsel filed an amended motion for new trial verified by appellant and notarized by counsel on March 26, 2001, outside the 30-day time limit in which to file an amended motion. *See* Tex. R. App. P. 21.4(b). An affidavit sworn to before a movant's attorney is insufficient to support a motion for new trial. Garza v. State, 630 S.W.2d 272, 273-74 (Tex.Cr.App. 1981); Stubbs v. State, 457 S.W.2d 563, 564 (Tex.Cr.App. 1970). Thus, not only was appellant's amended motion untimely, it was also unsupported by a properly sworn affidavit. We conclude the trial court did not err in denying appellant's motion and request for an evidentiary hearing with live witness testimony. Point of error two is overruled.

By his third point of error, appellant contends the trial court committed fundamental error during the punishment phase by failing to charge the jury on the issue of whether the complainant was voluntarily released alive and in a safe place. We disagree. Section 20.04(d) of the Penal Code entitles a defendant to a jury instruction in the punishment charge on the defensive issue of release in a safe place. Tex. Pen. Code Ann. § 20.04 (Vernon Supp. 2002). However, since the Penal Code was amended, a defendant has

been required to object to the absence of an instruction on the defensive issue or otherwise bring the matter to the trial court's attention to preserve the complaint for appeal. Posey v. State, 966 S.W.2d 57, 63 (Tex.Cr.App. 1998); *see also* Act of May 24, 1995, 74th Leg., ch. 318, § 4, Tex. Gen. Laws 2734, 2735-36. Prior to the amendment a trial court's failure to instruct the jury on the defensive issue was error even if the defendant did not object to the absence of the instruction in the charge. Williams v. State, 851 S.W.2d 282, 284, 287 (Tex.Cr.App. 1993). The record reflects that during the punishment phase, the trial court asked for any objections to the charge by either the State or defendant and both parties answered in the negative. Thus, without determining whether the evidence raised the issue of release in a safe place, we conclude that appellant did not preserve his complaint for appellate review. Point of error three is overruled.

By his fourth and sixth points, appellant asserts error by the trial court in overruling his objections to improper argument by the prosecution for urging a conviction (4) outside the evidence based on the demands and expectations of the community, and (6) outside the record based on "[e]verything that happens these days with domestic violence, that happens on the radio and the TV--." To be permissible, jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement. Cantu v. State, 939 S.W.2d 627, 633 (Tex.Cr.App. 1997), *cert. denied*, 522 U.S. 994, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997). Improper jury argument constitutes reversible error only if, in light of the entire record, the argument is extreme or manifestly

improper, violates a mandatory statute, or injects into the trial new facts which are harmful to the accused. Wilson v. State, 938 S.W.2d 57, 59 (Tex.Cr.App. 1996); Fant-Caughman v. State, 61 S.W.3d 25, 28 (Tex.App–Amarillo 2001, pet. ref'd). During jury arguments, prosecutors should refrain from making arguments based upon matters outside the record or alluding to information not introduced into evidence. Borjan v. State, 787 S.W.2d 53, 57 (Tex.Cr.App. 1990).

In Holberg v. State, 38 S.W.3d 137 (Tex.Cr.App. 2000), *cert. denied*, __U.S.__, 122 S.Ct. 394, 151 L.Ed.2d 298 (2001), the prosecutor asked the jury to be the "conscience of the community and to crack down on crime," and not to pick up a newspaper or turn on the television or radio years later and regret they did not take action when they had the chance. The Court found the argument to be a permissible plea for law enforcement. *Id*. at 141. Rhetorical questions by the prosecution during closing argument such as, "How many people are going to be kidnapped at knifepoint or beaten over the head with a tire tool?" and "How may innocent victims have to be beaten, robbed, kidnapped and murdered before we as a society get the message?" were found to be deductions from the evidence and a proper plea for law enforcement. Cook v. State, 858 S.W.2d 467, 477 (Tex.Cr.App. 1993).

Appellant complains about the prosecutor's comments regarding violence and everything that "happens on the radio and TV," and his statement to the jury that if they only found appellant guilty of assault to ask themselves what kind of message they were

11

sending the public. In proper context and considering the entire record, we find the prosecutor's arguments were not extreme or manifestly improper, did not violate a mandatory statute, or inject into the trial new facts harmful to appellant. We hold the comments to be a proper plea for law enforcement. Points of error four and six are overruled.

By his fifth point, appellant contends the trial court erred in overruling his motion for mistrial when the prosecution argued in a manner contrary to the law contained in the trial court's charge during the guilt/innocence phase. Appellant complains of the following comments by the prosecution:

> Ladies and gentlemen, we're not talking about we have to find the best hiding place in all of Harris County to be able to be found guilty of kidnapping. What we're talking about is a place not likely to be found, discovered, rescued, a place where someone can't easily walk on by and see what happened and be able to easily stop it. Sure, they found her, eventually. It took about 13 or 14 hours. But the law is saying, a house, a car –

Defense counsel objected that the prosecution was arguing law not in the charge and the trial court sustained the objection and instructed the jury to disregard the statement. Our sustention of appellant's first point for factually insufficient evidence to support a conviction for aggravated kidnapping pretermits consideration of appellant's argument that the prosecution's comments called for a conviction contrary to the law contained in the court's charge.

12

Accordingly, the judgment for aggravated kidnapping is reformed to reflect conviction for the lesser included offense of assault and as reformed, is affirmed; that portion of the judgment assessing punishment for the aggravated kidnapping is reversed and remanded to the trial court for a new punishment hearing.


Don H. Reavis
Justice


Do not publish.