# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00434-CR

**Bryan Teague, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT NO. 13773, HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found Bryan Teague guilty of murder. After finding enhancement allegations true, the jury assessed punishment at ninety-nine years in prison. On appeal, Teague contends that the evidence was legally insufficient to support the jury's rejection of his claim of self-defense. Although he did not request that the court instruct the jury at the guilt/innocence phase on the lesser-included offense of manslaughter or at the punishment phase on the issue of sudden passion, he contends that the trial court committed egregious error in failing to give those instructions. We will affirm the judgment.

### BACKGROUND

There is no dispute that Teague struck the decedent, Larry Jones, with a tool—either a grubbing hoe or a pickaxe—and that Jones died as a result of his injuries. All three of Teague's

issues on appeal essentially stem from his contentions that he was instinctively defending himself and that he did not intend to hurt anyone.

Appellant Teague, Charles Ellis, Will McMarion, the decedent Jones, and others occasionally passed the day drinking together under a large cedar tree near the intersection of Texas Highway 71 and FM 1209. The seeds of the deadly altercation were planted when Ellis found himself in debt for twenty dollars, either through a loan or a drug purchase, to McMarion. On the afternoon of August 20, 2008, Ellis offered ten dollars to McMarion as partial payment, but McMarion proclaimed that the debt had grown by a ten-dollar fee. Ellis disagreed, the two men scuffled, and McMarion kicked Ellis in the mouth, dislodging a tooth. Later that evening, Teague went with Ellis to McMarion's home to pay an additional ten dollars and to declare the debt paid in full. It is here that McMarion's and Teague's versions of events diverge.

McMarion's version of the night's events is that he and Jones were returning to McMarion's trailer when Teague and Ellis attacked them. McMarion said that, as he was putting his key into his doorlock, Jones was "at the car right there setting the beer on the car." McMarion said he was attacked as he turned back toward Jones, causing him to stumble "a long distance." McMarion said Teague and Ellis hit and stomped him without yelling or even speaking to him. McMarion said he saw Jones, who weighed between 120 and 130 pounds, lying on the ground and apparently dead. McMarion testified about, and the jury saw pictures of, the injuries McMarion suffered during the altercation.

Teague's version recounts that he and Ellis went to McMarion's family compound to repay him the remainder of the debt. After McMarion's grandmother told them he was not home,

2

they went to sit on the steps of McMarion's adjacent mobile home to wait for him. Teague testified that he saw only McMarion arrive, but later learned that Jones and a woman were with him. Teague testified that McMarion walked up and criticized him and Ellis for being too loud. Teague said that when he offered McMarion ten dollars in full satisfaction of Ellis's debt, McMarion told him the debt was none of Teague's business. Teague said that McMarion was drinking a canned beer and threw the partially full can at Teague's head from about ten feet away, then McMarion and Jones threw additional beers at him. Teague testified that he thought that his life was in jeopardy and that he needed to protect himself. He saw a grubbing hoe or pickaxe leaning against a car, grabbed it, and fended off McMarion's advance by hitting him in the chin with the flat end of the tool. Teague said the tool weighed between eight and ten pounds. Teague said Jones then kicked and hit him from the side, so he grabbed the tool and swung it to encourage Jones to get off of him. Teague said he aimed for Jones's side, not his head, and was not sure he had even hit Jones in the side.[1] When Jones did not attack further, Teague went to assist Ellis in fending off McMarion. Teague hit McMarion on the leg with the tool, then hit him with his fist. The struggle ended shortly thereafter. Teague testified that Jones was lying on the ground and that Jones said he was all right, so Teague and Ellis walked home. Teague said he took the tool with him and tossed it into some brush so that McMarion would not get it and attack them again.

McMarion's grandmother, Hazel Thomas, confirmed that Teague and Ellis knocked on her door asking to see McMarion and that she told them that McMarion did not live

---

[1] Having later learned of Jones's head injury, Teague theorized at trial as to how that might have occurred during the struggle.

with her. She testified that shortly thereafter she heard an extended argument, which prompted her to call the police.

Peace officers responding to the scene found Jones lying on the ground, incoherent, with blood pooled around his head. They also found McMarion beaten up and bleeding badly. Jones died days later in the hospital. The medical examiner testified that Jones had two wounds—one right behind his armpit on his back, about one inch across and 16 centimeters deep, and one in his temple, so deep that it penetrated his skull, went into the brain, and severed his left carotid artery. The severed artery caused a stroke from which Jones could not recover. The medical examiner testified that the head wound was caused by a sharp object like a pickaxe.

The trial court instructed the jury on murder and self-defense. Implicitly declining to find the homicide justified by self-defense, the jury found Teague guilty of murder.

## ANALYSIS

On appeal, Teague urges three errors. He contends that the jury's rejection of self-defense was not supported by legally sufficient evidence. He further contends that the trial court erred by not sua sponte giving two instructions to the jury—an instruction regarding the lesser-included offense of manslaughter at the guilt/innocence phase and an instruction regarding the mitigating effect of sudden passion at the punishment phase.

**Rejection of self-defense theory**

In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational

4

trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). A person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* Tex. Penal Code Ann. §§ 19.02(b)(1), 19.02(b)(2) (West 2011). A person acts knowingly with respect to a result of his conduct when he is aware that it is reasonably certain to cause the result. Tex. Penal Code Ann. § 6.03(b) (West 2011). The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). The jury may also infer an intent to cause serious bodily injury from the manner in which the offense was committed, the nature of the wounds inflicted, and the relative size and strength of the parties. *Nickerson v. State*, 69 S.W.3d 661, 667 (Tex. App.—Waco 2002, pet. ref'd).

When a defendant introduces evidence to support a claim of self-defense, the State bears the burden of persuasion to disprove it. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991). The State must prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913. To determine the legal sufficiency of the evidence to support a judgment of conviction, we must ask whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt and also could have found against the appellant on the self-defense issue beyond a reasonable

5

doubt. *Saxton*, 804 S.W.2d at 914. We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The trial court instructed the jury on murder, then instructed on self-defense as follows:

> [A] person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.
>
> . . . .
>
> "Deadly force" means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.
>
> "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.
>
> . . . .
>
> If you find from the evidence beyond a reasonable doubt that the defendant, Bryan Teague, on or about the 20th day of August 2008, in Bastrop County, Texas, did then and there intentionally or knowingly cause the death of an individual, Larry Jones, by striking Larry Jones with an object unknown to the Grand Jury, or with intent to cause serious bodily injury to an individual, Larry Jones, commit an act clearly dangerous to human life that caused the death of Larry Jones, by striking Larry Jones with an object unknown to the Grand Jury as alleged in the indictment, but you find, or have a reasonable doubt thereof, that the defendant was justified in using deadly force against Larry Jones because he was justified in using force against Larry Jones in self-defense, and the defendant used deadly force when and to the degree he reasonably believed the deadly force was immediately necessary to protect himself against Larry Jones' use or attempted use of unlawful deadly force then you will find the defendant not guilty of Murder.

6

Teague contends that the physical evidence corroborates his version of events and shows that McMarion's story was not possible. Jones was found lying between a vehicle and a fence, not next to McMarion's home where McMarion said he was ambushed. Blood was found surrounding Jones's head, spattered on a vehicle headlight, and on the couch where McMarion was found. Contrary to McMarion's account of a silent attack, his grandmother reported hearing loud arguing outside her home that persisted long enough that she called 911 for law enforcement.

We conclude that the jury could have accepted most of Teague's version of events and still rejected the reasonableness of his self-defense claim. The jury could have believed that McMarion and Jones initiated the struggle by hurling beer cans as Teague described and that Jones's physical assault escalated the conflict. The jury could have given some credence to Teague's testimony that he did not want to hurt anyone when he picked up the tool, did not swing at Jones's head, and was merely trying to get Jones to back off when he aimed for his side. A rational jury nevertheless could have found beyond a reasonable doubt (1) that Teague intended to cause serious bodily injury to Jones when he swung the eight-to-ten pound sharp metal implement and that, by hitting Jones in the head with the tool, Teague committed an act clearly dangerous to human life that killed Jones, and (2) that Teague could not reasonably have believed that he needed to use deadly force to defend himself. Even giving credence to Teague's version of events, the record supports the jury's rejection of Teague's self-defense claim.

The case for affirmance is stronger if we presume—as we must—that the jury resolved evidentiary conflicts in favor of the verdict. On the facts McMarion described, Teague was the aggressor and not entitled to self-defense. *See* Tex. Penal Code Ann. § 9.31(b)(4) (West 2011).

7

The discrepancy Teague asserts regarding Jones's location is neither apparent from the record nor dispositive. Although McMarion testified that the assault on him began near the trailer door, he testified that Jones lagged behind him and was setting some beer on a car. That location for Jones is consistent with Teague's testimony that his confrontation with Jones occurred near a car, with the blood spatter on the car, and with Jones's location when found by law enforcement. Even if Jones was near the trailer door when the struggle began, the relatively limited physical scope of the scene described by witnesses means he could have moved from the trailer to the car and fence quickly. Teague's own testimony is that he was on the trailer's steps when McMarion and Jones pelted him with beer cans,[2] that he obtained the pickaxe near a vehicle, and that Jones kicked him after he picked it up. Thus, Jones could have been near the car at all times or moved from the trailer to the car during the struggle. Though McMarion's assertion that the assault was silent conflicts with his grandmother's and Teague's report of an extended argument, resolution of that conflict is immaterial to the elements of murder and self-defense. To the extent McMarion's assertion of a silent attack weighs on credibility or an element of the offense, the standard of review requires that we view the evidence in the light most favorable to the verdict and presume that the jury resolved this conflict in favor of the verdict. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We conclude that the evidence is legally sufficient to support the jury's rejection of Teague's self-defense theory and the conviction for murder.

---

[2] Teague lists the discovery of beer cans near the vehicle among the physical evidence that supports his version of events. Teague testified, however, that he was seated near the mobile home when pelted with beer cans. The location where the beer cans were discovered is more consistent with McMarion's version of events.

8

**Failure to sua sponte give certain jury instructions**

Teague contends by his remaining issues that the trial court erred egregiously by failing to give jury instructions that he did not request. A trial court in a criminal case must, before argument at the guilt/innocence phase of a trial, give the jury a written charge setting forth the law applicable to the case. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). Trial courts have no duty to sua sponte instruct the jury on lesser-included offenses because such offenses are not "applicable to the case" absent a request by the defense for its inclusion in the jury charge. *Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010).[3] Appellant urges us to adopt the reasoning of Judge Johnson's dissent in *Tolbert* in which she opines that the court should hold that, when evidence raises the elements of a lesser-included offense, the lesser-included offense is law applicable to the case and the jury should be instructed regarding it regardless of whether a party requests the instruction or objects to its absence. *See id.* at 788-90 (Johnson, J., dissenting). We cannot adopt a position plainly rejected by the majority of a higher court. *See Rodriguez v. State*, 47 S.W.3d 86, 94-95 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (citing *State v. Schwarz*, 124 S.W. 420 (Tex. 1910)) (intermediate appellate courts are required to follow the court of criminal

---

[3] In *Tolbert*, the State—not the defendant—requested an instruction on a lesser-included offense to the charge of capital murder. *Tolbert v. State*, 306 S.W.3d 776, 778 (Tex. Crim. App. 2010). The trial court denied the State's request and the defense expressly stated at trial that it had no objection. *Id.* On appeal, appellant urged that the trial court erred by failing to instruct on the lesser-included offense of murder. The court of criminal appeals held that the trial court was not required to instruct on all lesser-included offenses raised by the evidence absent a request just as it was not required to instruct on all defensive issues raised by the evidence absent a request by the defendant. *Id.* at 781. The State's request for the instruction did not render the lesser-included offense law applicable to the case and did not preserve appellant's right to complain of the absence of the instruction. *Id.*

9

appeals when it deliberately and unequivocally interprets the law in a criminal matter). Ruling as appellant requests here essentially would deprive defendants of the strategy of forcing the State to prove the higher offense. *See Tolbert*, 306 S.W.3d at 781. The trial court in this case asked whether Teague had any additions, deletions, or corrections to the charge and his attorney stated that he had none. Under *Tolbert*, the trial court, therefore, had no obligation to instruct the jury on a lesser-included offense raised by the evidence absent a request from the defendant. *Id.* Teague has not shown reversible error in the absence at the guilt/innocence phase of an instruction regarding the lesser-included offense of murder.

Appellant also contends that the trial court erred egregiously by failing to instruct the jury regarding the punishment-mitigating issue of sudden passion, relying in part on *Trevino v. State*, 100 S.W.3d 232, 236-37 (Tex. Crim. App. 2003). In *Trevino*, however, the defendant requested and was denied an instruction on sudden passion and raised that denial as error by the trial court. *Id.* at 233, 236. Teague did not request and the trial court did not deny him an instruction. It simply did not give an instruction that was not requested. The Fort Worth court of appeals has determined that such a scenario does not present trial court error. *Swaim v. State*, 306 S.W.3d 323, 325 (Tex. App.—Fort Worth 2009, pet. ref'd). The *Swaim* court rejected arguments that the trial court must instruct on sudden passion in the absence of a request if any evidence raises the issue. *Id.*

The Fort Worth court's reasoning in *Swaim* is consistent with the court of criminal appeals's guidance in *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). In deciding whether the trial court erred by omitting a mistake-of-fact instruction, the court of criminal appeals

10

reconsidered its previous holding concerning whether trial courts erred by failing to sua sponte instruct juries regarding how kidnapping defendants might mitigate their punishment by releasing their victims in a safe place. *Id.* (reconsidering *Williams v. State*, 851 S.W.2d 282, 284, 287 (Tex. Crim. App. 1993)). The reconsideration was prompted in part by the legislature's amendment of the kidnapping statute that transformed "safe release" from an element of a lesser-included offense to a factor mitigating punishment. *See id.* at 63. The kidnapping statute provides as follows:

> At the punishment stage of a trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

Tex. Penal Code Ann. § 20.04(d) (West 2011). The court of criminal appeals wrote that, because the statute expressly requires the defendant to raise and prove "safe release," the defendant would be responsible for obtaining a jury instruction on "safe release" as well:

> The defendant also will have to object to the absence of an instruction on the issue in the court's charge or otherwise bring the matter to the trial court's attention if he wants to complain on appeal about the absence of the instruction on the issue in the court's charge.

*See Posey*, 966 S.W.2d at 63. The court of criminal appeals reasoned that, if trial courts were obligated to sua sponte give every instruction raised by the evidence without any action by the defense, the provisions of the jury charge statute concerning defense's obligation to object to errors of commission and omission in the charge would be meaningless. *See id.* (discussing

11

Tex. Code Crim. Proc. Ann. art. 36.14).[4] The court chose to discourage defendants from "lying behind the log" regarding the absence of the desired instruction and prohibit them from getting "two bites at the apple" if the all-or-nothing strategy with respect to the greater offense failed. *Posey*, 966 S.W.2d at 63. The court of criminal appeals deemed the decision not to bring the absence of the safe-release instruction to the trial court's attention to be a strategic choice that made the safe-release issue not applicable to the case. *Id.* The court of criminal appeals reasoned that the choice to make lesser-included offense not applicable to the case shows the absence of error by the trial court rather than an appellant's failure to preserve error. *See id.* at 63-64. Because no error is shown, the court reasoned that the egregious-error analysis for unpreserved jury charge error therefore did not apply. *See id.* (discussing *Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985)).

The procedural posture of *Posey* is very similar to the posture of this case. As it did with "safe release" and kidnapping, the legislature made "sudden passion" a mitigating factor in the punishment for murder:

> At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

---

[4] The statute provides in relevant part that, before reading the charge to the jury, the court must allow the defendant or his counsel a reasonable time to examine the charge and that the defendant "shall present his objections thereto in writing, distinctly specifying each ground of objection. Said objections may embody errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts . . . ." Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007).

12

Tex. Penal Code Ann. § 19.02(d) (West 2011). As in *Posey*, the defendant/appellant here did not request the omitted jury instruction or object to its absence, thereby rendering it law not applicable to the case and making its absence not error by the trial court. *See Posey*, 966 S.W.2d at 63. Guided by the court of criminal appeals in *Posey*, we conclude that the trial court had no duty to instruct the jury on the issue of "sudden passion" because the defendant failed to bring to the court's attention the absence of an instruction on the issue in the court's charge. *See id.* Teague has not shown reversible error in the absence at the punishment phase of an instruction on sudden passion.

## CONCLUSION

Finding that legally sufficient evidence supports the jury's verdict, including its rejection of the self-defense theory, and that the trial court did not err by failing to give jury instructions that were not requested, we affirm the judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Filed:  February 16, 2012

Affirmed

Do Not Publish

13