John Wesley HARRIS, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–92–01030–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 21, 1994.

---

2.  TEX.CODE CRIM.PROC.ANN. art. 26.13 (Vernon 1989 & Supp.1994).

**62**

Allen C. Isbell, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, John Wesley Harris, appeals his judgment of conviction for aggravated kidnapping, *see* TEX.PENAL CODE ANN. § 20.04 (Vernon 1989), and aggravated sexual assault. *See* TEX.PENAL CODE ANN. § 22.021 (Vernon 1989). The jury rejected his plea of not guilty and assessed punishment at forty-five (45) years confinement in the Institution-al Division of the Texas Department of Criminal Justice on each offense. We affirm.

The complaining witness testified that she is a native of Mexico and had been working for the Gillespie family as a housekeeper and caretaker for their children. On Saturday, February 16, 1991, she went out on a date with Hector Rodriguez. At about 2:00 a.m. on February 17, 1991, she and Rodriguez were in a car parked in the lot of a night club when appellant walked up, wearing a security officer's uniform. Appellant had a gun in his hand and a stocking over his face. He took Rodriguez's wallet and told him to take off his clothes and lay down on the floorboard. Appellant then walked around to where the complainant was sitting in the front seat, pointed a gun at her, and made her go with him. He told her that he had robbed a bank and was going to use her as a hostage. He then put duct tape on her eyes and hands, and carried her to another car.

While appellant was driving, he took the panty hose off of his face. He stopped at a trailer home, which he said was a friend's, opened it with a key, and carried her inside. Once inside the trailer, he put her in a room and closed the door. He gave her a red nightgown and told her to put it on. He then put her on a small cot and taped her arms to it. After covering her eyes and mouth with the duct tape, he left the room.

At about 6:00 a.m., appellant returned to the room, wearing only his underwear. He put a gun to her head and taped her feet to the bed. He proceeded to have non-consensual intercourse with her, as well as oral sodomy.

At approximately 8:30 p.m. on Sunday, another man (not appellant) came into the room brandishing a butcher knife. He told her that his friend (appellant) had told him that she was his girlfriend and offered her some Dr. Pepper to drink. He also took her to the restroom. He told her that if she was not really his friend's girlfriend, he would kill them both. He then forced her to perform oral sodomy and attempted anal intercourse. He warned her that if she told his friend what he had done, he would kill her.

At about 3:30 a.m. on Monday morning, appellant returned to the room and again forced sexual intercourse and oral sodomy. He left for a short time and returned to commit oral sodomy for a third time. He then laid down beside her and slept. While he slept, she removed the tape from her eyes and saw him clearly from five inches away. Upon awaking, he left the room. Subsequently, the other man returned, handcuffed her right hand to the bed, and forced her to perform oral sodomy.

At about 1:00 a.m. on Tuesday morning, appellant returned to the room with his hands tied together and told the complainant that the other man had done the tieing. He promised her that if she untied his hands, he would let her go home. When she untied his hands with her left hand, he got the key to the handcuffs and freed her right hand. He forced her to douche and gave her a dress to put on. While she was preparing to leave, he took photos of her. He told her that he wanted pictures of her so that if she told the police about him, he could find her and kill her. He also told her that he knew her name and where she worked from items in her purse. He warned her to tell the police that it was a white man who had kidnapped her, and that if she did not, he would kill her and the Gillespie children.

Appellant then covered the complainant's eyes and drove her to a public phone. He dialed Mr. Gillespie's phone number and told the complainant to tell him to pick her up at a gas station on the corner of Blalock and Westview. Appellant then drove around the corner and dropped the complainant off. It was about 2:30 a.m., cold, and rainy. After walking to the gas station, the complainant was met by police officers who knew her name and told her they were there to help her.

Police officers later went to appellant's residence with an arrest warrant for traffic violations. In addition, they asked for consent to search the premises and appellant signed a consent form. Several items were seized at the residence, including many of the complaining witness' belongings. Prior to trial, appellant moved to suppress the evidence seized pursuant to the consent search.

The trial court opted to carry the motion with the trial and, after a hearing outside the presence of the jury, admitted the evidence.

At the punishment stage of the trial, the court charged the jury as to the aggravated kidnapping conviction in pertinent part as follows:

> [I]f you find beyond a reasonable doubt the defendant did not voluntarily release the victim alive and in a safe place you will assess the punishment of the defendant upon said finding of guilt at any term of years not less than five years nor more than ninety-nine years or life, and the jury in its discretion may, if it chooses, assess a fine in any amount not to exceed $10,-000.00, unless you find from the evidence beyond a reasonable doubt that the defendant voluntarily released the victim alive and in a safe place, in which event you will assess the punishment of the defendant upon said finding at confinement in the institutional division of the Texas Department of Criminal Justice for any term of years not less than two years nor more than twenty years, and the jury in its descretion [sic] may, if it chooses, assess a fine not to exceed $10,000.00.

The foreperson of the jury signed the paragraph stating the following:

> "We, the Jury, having found the defendant guilty of aggravated kidnapping in count one of the indictment, do further find from the evidence beyond a reasonable doubt that the victim was not voluntarily released alive and in a safe place by the defendant and assess his punishment at confinement in the institutional division of the Texas Department of Criminal Justice for 45 years."

Appellant asserts two points of error. First, the trial court erred in admitting testimony and evidence with regard to the search of appellant's residence because the State failed to satisfactorily refute appellant's testimony that he was coerced into giving his consent, in part, by a police officer pointing a gun at him. Second, the cause should be remanded for new trial in count one (aggravated kidnapping) on the issue of punishment because the evidence is insufficient to sup-

port a jury finding beyond a reasonable doubt that appellant did not voluntarily release complainant in a safe place.

■ In his first point of error, appellant contends that the State did not refute his testimony that his consent was not voluntary. The burden is on the State to show by clear and convincing evidence that the consent was voluntarily given. *Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991) (citing *Paprskar v. State*, 484 S.W.2d 731, 737 (Tex.Crim.App. 1972)). The question of whether a consent to search was "voluntary" is a question of fact to be determined from the totality of the circumstances. *Reyes v. State*, 741 S.W.2d 414, 430 (Tex.Crim.App.1987); *Meeks v. State*, 692 S.W.2d 504, 510 (Tex.Crim.App. 1985). The trial court is the sole fact finder at a hearing on a motion to suppress evidence and may choose to believe or disbelieve any or all of the witnesses' testimony. *Johnson*, 803 S.W.2d at 287. An appellate court is not at liberty to disturb any finding by the trial court which is supported by the record. *Id.*

Appellant testified during a motion to suppress hearing outside the presence of the jury that when the officers arrived to arrest him, one was standing in the vicinity of his trailer home pointing a gun at him. He admitted to signing a consent form and stated that a gun was not pointing at him when he signed it. On appeal, he complains that the two officers who testified at the motion to suppress hearing were not in a position to see the officer with the gun because they were "busy" arresting him and had their backs to the officer with the gun. Appellant testified that one officer asked to come inside and talk about the traffic violations, so he let him in. He further testified that about six or seven officers subsequently came inside the home and that the officer who had previously pointed the gun at him kept his gun in his hand (but not pointed) after he entered the trailer. He stated that the officers were at his residence for approximately thirty minutes and that the gun was pointed at him for approximately the first five minutes.

Officers D.D. Shirley and Bill Stephens testified during the motion to suppress hearing that they, along with Officer Gonzales, went to appellant's door while the other two or three officers remained in the vicinity of the trailer home. After appellant answered the door, Shirley informed him that they had arrest warrants for traffic violations and placed him under arrest. The officers testified that appellant asked if he could go inside and get his money and Shirley told him that he could, but the officers would have to go with him. Appellant responded that that was fine, so Shirley, Stephens, and Gonzales escorted him inside. Upon entering the residence, Shirley told appellant that they were also investigating a kidnapping and asked permission to search the residence. Appellant replied that he knew nothing of the kidnapping and gave them permission to search. Both officers testified unequivocally that no officer pointed a gun at appellant at any time and that no threats were made to appellant whatsoever.

According to appellant's own testimony, a search of the premises was not even mentioned at the time an officer was allegedly pointing a gun at him. The gun pointing allegedly occurred during the arrest outside and it was not until they were inside the home did the subject of a search arise. He even testified that a gun was *not* pointing at him at the time he signed the consent form. This, coupled with the two officers' testimony, supports the trial court's finding that the search was voluntarily given. Thus, the trial court did not err in denying the motion to suppress and appellant's first point of error is overruled.

■ In his second point of error, appellant asserts that there is insufficient evidence to support the jury finding that appellant did not leave the victim in a safe place. When reviewing the sufficiency of the evidence, the appellate court must determine whether any rational trier of fact could have made the finding beyond a reasonable doubt, based on the evidence presented at trial. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Appellant cites several factors that should be considered in determining whether the place in question was safe:

(1) the remoteness of the location;

(2) the proximity of authorities or persons who could aid or assist;

(3) the time of day;

(4) climatic conditions;

(5) the condition of the victim;

(6) the character of the location or surrounding neighborhood; and

(7) the victim's familiarity with the location or surrounding neighborhood.

*Williams v. State*, 718 S.W.2d 772, 774 (Tex. App.—Corpus Christi 1986,), *rev'd on other grounds*, 851 S.W.2d 282 (Tex.Crim.App. 1993).

**Remoteness:** Although this category suggests the secludedness of an area, the State raises an interesting argument: one could not possibly know how unsafe the streets of Houston are at night having not lived in the city. The victim was left by herself down the street from a deserted gas station at 2:30 a.m. in Houston.

***Proximity of authorities or persons who could aid or assist:*** Although appellant had arranged that the victim call her employer and have him meet her at the gas station, he did not know if her employer was actually there. The gas station was closed, and there was no one there to aid her. Appellant contends that police arrived within minutes; however, appellant did not know they would be there, thus, he intended to leave her in a deserted place.

***Time of day:*** Appellant left the victim at 2:30 a.m., not a safe time of day.

***Climatic conditions:*** The incident occurred in February and the evidence indicates that it was cold and raining. In addition, the victim was not wearing warm clothing when appellant left her; she only had on a dress.

***Condition of the victim:*** The victim had just been through a traumatic experience, to say the least. She had had nothing to eat in two days and had been raped repeatedly while her life was threatened. Furthermore, the victim did not speak much English. Needless to say, the condition of the victim was poor.

***Character of the location or surrounding neighborhood:*** Officer Stephens testified at trial that he did not regard the corner of Blalock and Westview to be a safe part of Houston.

***Victim's familiarity with the location or surrounding neighborhood:*** The victim testified that she did not feel safe at the place where appellant had left her.

We hold that there is sufficient evidence, even using appellant's factors, to support the jury's finding that appellant did not leave the victim in a safe place. Appellant's second point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.