ACCEPTED
03-15-00125-CR
1111493
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/13/2016 2:09:33 PM
JEFFREY D. KYLE
CLERK

NOS. 03-15-00125-CR; 03-15-00126-CR

COURT OF APPEALS

FOR THE

THIRD SUPREME JUDICIAL DISTRICT

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/13/2016 2:09:33 PM
JEFFREY D. KYLE
Clerk

JAMES MONTOYA,
Appellant

VS.

THE STATE OF TEXAS,
Appellee

APPEAL FROM

THE 207TH JUDICIAL DISTRICT COURT

HAYS COUNTY, TEXAS

TRIAL COURT CAUSE NOS. CR-12-0635; CR-12-0637

**STATE'S BRIEF**

Brian Erskine
Assistant Criminal District Attorney
712 South Stagecoach Trail, Suite 2057
San Marcos, Texas 78666
State Bar No. 24074182
Attorney for the State of Texas
brian.erskine@co.hays.tx.us

## NAMES OF PARTIES

Appellee:                  State of Texas

Attorneys for the State:  
    At trial:          Wesley H. Mau, Criminal District Attorney

Brian Erskine, Assistant Criminal District Attorney

Laura Garcia, Assistant Criminal District Attorney

    On appeal:     Brian Erskine, Assistant Criminal District Attorney

712 South Stagecoach Trail, Suite 2057

San Marcos, Texas 78666

State Bar No. 24074182

Attorneys for the State of Texas

Appellant:             James Montoya

Attorney:  
    At trial:          Ariel Payan

1012 Rio Grande

Austin, Texas 78701

    On appeal:     Ariel Payan

1012 Rio Grande

Austin, Texas 78701

# TABLE OF CONTENTS

**NAMES OF PARTIES** ...............................................................................................ii

**TABLE OF CONTENTS** ......................................................................................... iii

**INDEX OF AUTHORITIES**.................................................................................iv

**STATEMENT OF THE CASE** .............................................................................2

A Hays County Grand Jury indicted James Montoya ("Montoya") on August 1, 2012 for one count of Aggravated Kidnapping in cause number CR-12-0635 and two counts of Aggravated Sexual Assault in CR-12-0637. These cases were joined. Appellant pled not guilty. A jury trial commenced on February 9, 2015. Appellant was convicted in said cause and was sentenced to Life in Prison on each charge........2

**STATEMENT REGARDING ORAL ARGUMENT** .............................................2

**STATEMENT OF FACTS**......................................................................................2

**SUMMARY OF THE ARGUMENT**......................................................................3

**ARGUMENT**...........................................................................................................3

   TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING PROPER
   QUESTION TO VENIREPANEL. ERROR, IF ANY, IS HARMLESS

   EVIDENCE IS SUFFICIENT FOR A RATIONAL TRIER OF FACT TO HAVE FOUND
   VICTIM WAS RELEASED IN AN UNSAFE PLACE.

**CONCLUSION**......................................................................................................14

**CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P., RULE 9.4**.......16

**CERTIFICATE OF SERVICE** ............................................................................17

# INDEX OF AUTHORITIES

## CASES

*Allridge v. State*, 762 S.W.2d 146 (Tex. Crim. App. 1988) ........................................3, 4

*Barajas v. State*, 93 S.W.3d 36 (Tex. Crim. App. 2002)........................................5

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). ........................................10

*Butcher v. State*, 454 S.W.3d 13 (Tex. Crim. App. 2015)........................................12, 13

*Davis v. State*, 313 S.W.3d 317 (Tex. Crim. App. 2010) ........................................4

*Faulder v. State*, 745 S.W.2d 327 (Tex. Crim. App. 1987) ........................................3

*Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992) ........................................4

*Gonzales v. State*, 994 S.W.2d 170 (Tex. Crim. App. 1999) ........................................8

*Halprin v. State*, 170 S.W.3d 111 (Tex. Crim. App. 2005)........................................5

*Harris v. State*, 882 S.W.2d 61 (Tex. App.—Houston [14th Dist.]
  1994, pet. ref'd) ........................................13

*Jackson v. Virginia*, 443 U.S. 307 (1979)........................................10

*Johnson v. State*, 982 S.W.2d 403 (Tex. Crim. App. 1998)........................................4

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) ........................................11

*Lopez v. State*, 2013 WL 4487555 (Tex. App.—Austin Aug. 15,
  2013, no. pet. h.)........................................11

*Margraves v. State*, 34 S.W.3d 912 (Tex. Crim. App. 2000)........................................11

*Martin v. State*, 200 S.W.3d 635 (Tex. Crim. App. 2006) ...................................4

*Mathis v. State*, 576 S.W.2d 835 (Tex. Crim. App. 1979) ...................................4

*Moore v. State*, 999 S.W.2d 385 (Tex. Crim. App. 1999)...................................5

*Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)...................................12

*Penry v. State*, 903 S.W.2d 715 (Tex. Crim. App. 1995)...................................5

*Sanchez v. State*, 165 S.W.3d 707 (Tex. Crim. App. 2005) ...............................8, 9

*Smith v. State*, 703 S.W.2d 641 (Tex. Crim. App. 1985) ...................................4

*Standefer v. State*, 59 S.W.3d 177 (Tex. Crim. App. 2001)................... 3, 4, 5, 6, 8, 15

*Watson v. State*, 204 S.W.3d 404 (Tex. Crim. App. 2006). ...............................11

*Williams v. State*, 718 S.W.2d 772 (Tex. App.—Corpus Christi

1986)...................................................................................................12

*Woods v. State*, 152 S.W .3d 105, 109–110 (Tex. Crim. App.

2004).....................................................................................................8

**RULES**

TEX. R. APP. P. 38.2...........................................................................................1

TEX. R. APP. P. 39.7...........................................................................................2

TEX. R. APP. P. 44.2(b) .....................................................................................8

NOS. 03-15-00125-CR; 03-15-00126-CR

COURT OF APPEALS

FOR THE

THIRD SUPREME JUDICIAL DISTRICT

JAMES MONTOYA,
Appellant

VS.

THE STATE OF TEXAS,
Appellee

APPEAL FROM

THE 207TH JUDICIAL DISTRICT COURT

HAYS COUNTY, TEXAS

TRIAL COURT CAUSE NOS. CR-12-0635; CR-12-0637

**STATE'S BRIEF**

TO THE HONORABLE JUSTICE OF THE COURT OF APPEALS:

COMES NOW the State of Texas, by and through her Assistant District Attorney, Brian Erskine, and files this Brief in Opposition to Appellant's Brief pursuant to Texas Rules of Appellate Procedure Rule 38.2 and would show the Court the following:

Page 1

## STATEMENT OF THE CASE

A Hays County Grand Jury indicted James Montoya ("Montoya") on August 1, 2012, for one count of Aggravated Kidnapping in cause number CR-12-0635[1] and two counts of Aggravated Sexual Assault in CR-12-0637.[2] These cases were joined.[3] Appellant pled not guilty. A jury trial commenced on February 9, 2015.[4] Appellant was convicted in said cause and was sentenced to Life in Prison on each charge.[5]

## STATEMENT REGARDING ORAL ARGUMENT

The State requests oral argument to aid the Court in the decisional process related to Montoya's assertions.

## STATEMENT OF FACTS

The State does not object to Montoya's statement of facts, however, pertinent facts have been supplemented to resolve the issues presented by Montoya and to clarify interpretations of Montoya's actions.

---

[1] CR-12-0635 CR 5.
[2] CR-12-0637 CR 6.
[3] CR-12-0635 CR 8; CR-12-0637 CR 9.
[4] CR-12-0635 CR 33; CR-12-0637 CR 56.
[5] CR-12-0635 CR 93; CR-12-0637 CR 116, 118.

# SUMMARY OF THE ARGUMENT

The State's hypothetical jury question falls far short of attempting to commit a veniremember to consider the minimum sentence based on specific evidentiary facts. Therefore, the trial court did not abuse its discretion.[6] If this Court finds an abuse of discretion, error, if any, is harmless. Additionally, it is clear from the evidence at trial that Montoya did not leave M.A. in a safe place. The jury could have relied on M.A.'s testimony to ascertain whether Montoya left her in a safe place. Therefore, the evidence is legally sufficient to support the jury's verdict.

# ARGUMENT

## STATE'S RESPONSE TO POINT OF ERROR ONE

TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING PROPER QUESTION TO VENIREPANEL. ERROR, IF ANY, IS HARMLESS

### *Standard of Review*

The trial court has broad discretion over the jury selection process.[7] The propriety of a particular question is within the trial court's discretion and will not be disturbed absent an abuse of discretion.[8] A trial court's discretion is abused only when a proper question about a proper area of inquiry is prohibited.[9] A question is

---

[6] *See Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001).
[7] *Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988).
[8] *Allridge*, 762 S.W.2d at 163; *Faulder v. State*, 745 S.W.2d 327, 334 (Tex. Crim. App. 1987).
[9] *Allridge*, 762 S.W.2d at 163.

proper if it seeks to discover a juror's views on an issue applicable to the case.[10] An otherwise proper question is impermissible, however, if it attempts to commit the juror to a particular verdict based on particular facts.[11] Both the State and defense are entitled to jurors who can consider the entire punishment range for the particular statutory offense—i.e., from the maximum to the minimum and all points in between.[12] Jurors must be able to consider both "a situation in which the minimum penalty would be appropriate and ... a situation in which the maximum penalty would be appropriate."[13] Therefore, both sides may question the panel on the punishment range[14] and may commit jurors to consider the entire punishment range for the statutory offense.[15] A question committing a juror to consider the minimum punishment is both proper and permissible.[16] However, counsel veers into

---

[10] *Smith v. State*, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985).

[11] *Standefer*, 59 S.W.3d at 181.

[12] *Johnson v. State*, 982 S.W.2d 403, 405–06 (Tex. Crim. App. 1998).

[13] *Fuller v. State*, 829 S.W.2d 191, 200 (Tex. Crim. App. 1992).

[14] *See Martin v. State*, 200 S.W.3d 635, 640 (Tex. Crim. App. 2006) (both the defense and the State are permitted to voir dire potential jurors concerning the range of punishment for felony and misdemeanor driving-while-intoxicated charges); *Mathis v. State*, 576 S.W.2d 835, 839 (Tex. Crim. App. 1979).

[15] *Davis v. State*, 313 S.W.3d 317, 346 (Tex. Crim. App. 2010) ( "When the law requires a certain type of commitment from jurors, such as considering the full range of punishment, an attorney may ask prospective jurors to commit to following the law in that regard.").

[16] *See Standefer*, 59 S.W.3d at 181 ("[Q]uestions concerning a juror's ability to consider the full range of punishment for a particular offense meet ... the definition of commitment questions but are nevertheless proper.").

impermissible commitment questions when he attempts to commit a veniremember to consider the minimum sentence based on specific evidentiary facts.[17]

*Analysis*

The State may provide examples to illustrate various scenarios in which a defendant would be guilty of an offense without asking a commitment question. Even if those examples are given in the context of a discussion on the juror's minimum punishment consideration, unless the question attempts to bind the juror, it is not a commitment question.[18] The prosecution's question did not attempt to bind the veniremember to resolve or refrain from resolving an issue on the basis of one or more facts contained in the question.[19]

During its voir dire, the state asked the following question of the venire:

> Okay. So is there a hypothetical set of facts where you can consider probation for aggravated kidnapping and aggravated sexual assault? For instance, a young married couple going through a tumultuous relationship. They are separated. There's allegations of infidelity between both of them, on either side, but they are thinking about working it out. He calls her up and says, Hey, I want to take you out on a date. Let's go get a dinner and a movie. Right. She says reluctantly, Okay. He goes and picks her up and he drives, but he doesn't go near a

---

[17] *See, e.g., Barajas v. State*, 93 S.W.3d 36, 38, 40 (Tex. Crim. App. 2002) (improper to ask whether jurors could be impartial in a case involving a victim who was eight to ten years old); *Moore v. State*, 999 S.W.2d 385, 406–07 (Tex. Crim. App. 1999) (improper to ask juror, who stated that she could consider youth as a mitigating factor, whether she would consider a nineteen-or twenty-year-old a "youth" for purposes of imposing the death penalty); *Penry v. State*, 903 S.W.2d 715, 740 (Tex. Crim. App. 1995) (improper to ask whether victim-impact evidence would prevent a juror from assessing a life sentence).

[18] *Halprin v. State*, 170 S.W.3d 111, 123 (Tex. Crim. App. 2005) reh'g denied.

[19] *See Standefer* , 59 S.W.3d at 180; Question is a commitment question "if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question."

restaurant or a theater, *but instead he goes to a remote park and he parks the vehicle.* Right. Here you have deception, secreting to a place not likely to be found. Okay. *She's worried. He's becoming agitated that she's not giving in to his advances in the car. He starts kissing on her neck and she's pushing away, and he slaps her, and she is pushing away and he punches her.* All right. *Maybe he pulls her pants down and he touches her.* Okay. And she pushes away, *she opens the door and she runs, and she calls the cops.* So you have contact, right, with her sexual organ. *You have aggravated sexual assault. You have aggravated kidnapping.* Let's assume for the moment that those set of facts meet the elements of that crime. Now, that man has never before ever committed any crime. He's young. He has a job. He's remorseful. Probation is ten years, fines, classes, course work, intensive supervision. He's a candidate. A good one. And it is available to him. Is there anybody here under those hypothetical facts that would not consider probation?[20]

This question was not improper.[21] The voir dire record's totality reflects that the prosecution explained that the veniremember should have an open mind and consider all of the evidence.

Appellant asserts the question allowed by the trial judge was a commitment question, which propounded facts that were unnecessary to a proper question as to the juror's ability to consider the full punishment range in a case. Appellant further objects to the italicized facts in the State's hypothetical as unnecessary to reach the stated question.[22] The facts in this cause are drastically different than those espoused in the State's hypothetical.

---

[20] 2 RR 120-122. Emphasis as reflected in Appellant's brief, pg. 8.
[21] *See Standefer*, 59 S.W.3d at 180–82.
[22] Appellant's brief, pg. 8.

Prior to the assault, M.A.[23] and Montoya were unknown to each other.[24] Montoya picked M.A. up from the side of the interstate and offered to help her retrieve gas for her vehicle.[25] Instead of taking M.A. to a gas station, Montoya pulled over near a secluded underpass in a construction yard and M.A. attempted to run away.[26] M.A. was assaulted, dragged back into the vehicle and forced to perform oral sex on Montoya.[27] Montoya then penetrated M.A.'s sexual organ with his penis.[28] M.A. reached for a beer bottle in the truck and struck Montoya over the head.[29] Both M.A. and Montoya exited the vehicle and Montoya threw M.A.'s stuff, including her cell phone, on the ground at her feet and left.[30] M.A. then called the police.[31]

The State's hypothetical jury question falls far short of attempting to commit a veniremember to consider the minimum sentence based on specific evidentiary facts. Therefore, the trial court did not abuse its discretion as this question was not an improper commitment question.[32]

---

[23] M.A. is a pseudonym used for the victim in this cause.
[24] 3 RR 186.
[25] 3 RR 181.
[26] 3 RR 181.
[27] 3 RR 184-191.
[28] 3 RR 191-193.
[29] 3 RR 195-196.
[30] 3 RR 196-202.
[31] 3 RR 203.
[32] See Standefer, 59 S.W.3d at 180–82.

Even if the trial court abused its discretion by allowing the State's improper commitment question, the error is subject to a harmless error analysis.[33] The standard of harm set out in Rule 44.2(b) of the Texas Rules of Appellate Procedure is the proper test to determine whether a defendant has been harmed by an improper commitment question.[34] In determining harm, appellate courts "assess the potential harm of the State's improper commitment questioning by focusing on whether a biased juror—one who had explicitly or implicitly promised to prejudge some aspect of the case because of the State's improper questioning—actually sat on the jury."[35] The reviewing court must ultimately determine whether the jury as a whole, or any specific juror, was "poisoned" by the State's improper commitment questions on a legal or fact issue important to the verdict.[36]

In determining whether the State's improper commitment questions to the venire panel were harmful, appellate courts might consider the following factors:

> 1) whether the questions were unambiguously improper and attempted to commit one or more venire members to a specific verdict or course of action;
> 2) how many, if any, venire members agreed to commit themselves to a specific verdict or course of action if the State produced certain evidence;

---

[33] *Gonzales v. State*, 994 S.W.2d 170, 171 (Tex. Crim. App. 1999).

[34] *Sanchez v. State*, 165 S.W.3d 707, 713 (Tex. Crim. App. 2005); *see* TEX. R. APP. P. 44.2(b) (inquiry is whether defendant's substantial rights were affected by error); *see also Woods v. State*, 152 S.W .3d 105, 109–110 (Tex. Crim. App. 2004) ("A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict.").

[35] *Sanchez*, 165 S.W.3d at 713.

[36] *Id.*

3) whether the venire members who agreed to commit themselves actually served on the jury;

4) whether the defendant used peremptory challenges to eliminate any or all of those venire members who had committed themselves;

5) whether the defendant exhausted all of her peremptory challenges upon those venire members and requested additional peremptory challenges to compensate for their use on improperly committed venire members;

6) whether the defendant timely asserted that a named objectionable venire member actually served on the jury because she had to waste strikes on the improperly committed jurors; and

7) whether there is a reasonable likelihood that the jury's verdict or course of action in reaching a verdict was substantially affected by the State's improper commitment questioning during voir dire.[37]

Here, there is nothing in the record to indicate whether any identifiable venire members explicitly or implicitly agreed to commit themselves to a specific verdict or course of action as a result of the purported improper commitment question. Thus, there is no way to know whether that venire member was struck for cause or peremptorily, or whether he or she was chosen to sit on the jury. Therefore, the record does not show that an objectionable venire member actually served on the jury. In addition, the record is silent as to whether Montoya exhausted all of his peremptory challenges. It does not show that Montoya requested more peremptory challenges. Accordingly, based on the record, error, if any, did not affect Montoya's substantial rights. Error, if any, is harmless. Montoya's issue one claim is meritless.

---

[37] *Id.*

## STATE'S RESPONSE TO POINT OF ERROR TWO

EVIDENCE IS SUFFICIENT FOR A RATIONAL TRIER OF FACT TO HAVE FOUND VICTIM WAS RELEASED IN AN UNSAFE PLACE.

### *Sufficiency of Evidence Standard of Review*

Due process requires the State to prove beyond a reasonable doubt every element of the crime charged.[38] In Texas, the *Jackson* standard is the only standard applied when courts are reviewing sufficiency of evidence claims.[39] Under the Jackson standard appellate courts:

(1) view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and
(2) assume that the jury resolved conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[40]

The appellate court's "role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally[;] . . . [it] will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element."[41] There must be an objective basis in the record in order to say that the

---

[38] *Jackson v. Virginia*, 443 U.S. 307 (1979).
[39] *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).
[40] *Lopez v. State*, 03-11-00086-CR, 2013 WL 4487555 (Tex. App.—Austin Aug. 15, 2013, no. pet. h.) (citing *Laster v. State*, 275 S.W.3d 512, 522 (Tex. Crim. App. 2009) (stating that under the *Jackson* standard, "it is the jury's duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").
[41] *Laster*, 275 S.W.3d at 522.

great weight and preponderance of the evidence contradicts the jury's verdict.[42] Because the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony.[43] Where testimony at trial definitively favors or contradicts the jury's verdict, the jury's credibility determination is paramount.[44] Therefore, a decision is not manifestly unjust solely because a court of appeals would have resolved the conflicting evidence in a different way.[45]

The jury alone decides whether to believe testimony and how to resolve any conflicts or inconsistencies in the evidence.[46] Several factors might be considered in determining whether the place in question was safe:

(1) the remoteness of the location;

(2) the proximity of authorities or persons who could aid or assist;

(3) the time of day;

(4) climatic conditions;

(5) the condition of the victim;

(6) the character of the location or surrounding neighborhood; and

(7) the victim's familiarity with the location or surrounding neighborhood.[47]

---

[42] *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).
[43] *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).
[44] *Watson*, 204 S.W.3d at 417.
[45] *Id.*
[46] *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998).

Factors other than the seven listed may also be considered, as this list includes merely nonexclusive aids that may be considered to guide determination under the totality of the circumstances of each case whether the place at which the complainant was released was "safe."[48] For example, the age of the complainant may be significant, or other factors such as the competency of the complainant or whether the complainant has a physical disability may be significant.[49]

### *Analysis: Evidence sufficient to support jury's unsafe place finding*

Sufficient evidence was presented such that a rational trier of fact could have found victim was left in an unsafe place.

***The time of day:*** M.A. left work in Buda, Texas around 1:15am, travelling towards her home in New Braunfels, Texas. The Courts have found that this time of day is not safe.[50]

***Climatic conditions:*** It was a cold February evening and M.A. was wearing her work polo and a jacket.[51] Further, M.A. had her clothes torn during the violent assault.[52]

***The remoteness of the location:*** M.A. ran out of gas but was able to pull her car to the roadway shoulder somewhere on the interstate north of San Marcos, Texas.[53]

---

[47] *Williams v. State*, 718 S.W.2d 772, 774 (Tex. App.—Corpus Christi 1986), rev'd on other grounds, 851 S.W.2d 282 (Tex. Crim. App. 1993).
[48] *Butcher v. State*, 454 S.W.3d 13 (Tex. Crim. App. 2015).
[49] *Id.*
[50] 3 RR 172-173. *Harris v. State*, 882 S.W.2d 61, 65 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (2:30am is not a safe time of day).
[51] 3 RR 174.
[52] 3 RR 187-188.

M.A. attempted calling friends and family for help to no avail.[54] M.A. had no choice but to leave her car and attempt to walk down the interstate to find a gas station in the middle of the night.[55] "[M.A.] knew there wasn't one close by, probably for another two exits or so."[56] "[Montoya] offered a ride to a gas station, because there wasn't a gas station around, and it was cold out."[57]

***The character of the location or surrounding neighborhood:*** M.A. affirmed that there were no spotlights or streetlights in the area where Montoya picked her up.[58] Montoya then drove M.A. to an underpass below the interstate and parked in "a space on the underpass, where they have, like, the highway bricks."[59]

***The proximity of authorities or persons who could aid or assist:*** After the assault, M.A. was left at this interstate underpass, out of other motorists' view.[60] M.A. was not able to get her phone working immediately because it was placed in airplane mode by someone other than herself.[61]

***The victim's condition:*** M.A.'s clothes were ripped.[62] She was injured, scared, and her belongings were scattered on the pavement.[63]

---

[53] 3 RR 177.
[54] 3 RR 179-180.
[55] 3 RR 179-180.
[56] 3 RR 180.
[57] 3 RR 181.
[58] 3 RR 181.
[59] 3 RR 183; State's Exhibits 2-16.
[60] 3 RR 182; State's Exhibit 1.
[61] 3 RR 202-203.
[62] 3 RR 187-188.

***The victim's familiarity with the location or surrounding neighborhood:*** Appellant asserts M.A. was "very familiar" with the area because M.A. stated "[o]n my way to school on the weekends, I would pick up my friend, Mindy, that lives in a mobile home down the street from there.[64] At best, M.A. knew of the exit and that a neighborhood may be nearby. There is no evidence in the record to support M.A. knew the neighborhood was directly north of her location or a less than one mile distance approximation as asserted by Appellant.[65]

It is clear from the evidence at trial that Montoya did not leave M.A. in a safe place. The jury could have relied on M.A.'s testimony to ascertain whether Montoya left her in a safe place. Therefore, the evidence is legally sufficient to support the jury's verdict. Montoya's issue two claim is meritless.

## CONCLUSION

The State's hypothetical jury question falls far short of attempting to commit a veniremember to consider the minimum sentence based on specific evidentiary facts. Therefore, the trial court did not abuse its discretion as this was not an improper commitment question.[66] If this Court finds an abuse of discretion, error, if any, is harmless. It is clear from the evidence at trial that Montoya did not leave M.A. in a

---

[63] 3 RR 187-188; 197-201; State's Exhibits 17-34, 43A-F, 44, 45.
[64] 3 RR 182.
[65] Appellant's Brief, pg. 16.
[66] *See Standefer*, 59 S.W.3d at 180–82.

safe place.   The jury could have relied on M.A.'s testimony to ascertain whether Montoya left her in a safe place. Therefore, the evidence is legally sufficient to support the jury's verdict.

Respectfully submitted,

By:

Brian Erskine
Assistant Criminal District Attorney
712 South Stagecoach Trail, Suite 2057
San Marcos, Texas 78666
State Bar No. 24074182
Attorney for the State of Texas
brian.erskine@co.hays.tx.us

## CERTIFICATE OF COMPLIANCE
## WITH TEX. R. APP. P., RULE 9.4

I certify that this brief contains 2,350 words, exclusive of the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.

Brian Erskine
Asst. Criminal District Attorney

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing brief has been email-delivered to:

Ariel Payan   via email:   arielpayan@hotmail.com

on this the 13th day of June, 2016.

Brian Erksine
Asst. Criminal District Attorney